**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

SAUDER WEST FARMS, INC. and
FARMERS STATE BANK OF
ALICEVILLE,

        **Plaintiffs,**

v.

SENTRY SELECT INSURANCE CO.,

        **Defendant.**

Case No. 16-4192-DDC-KGG

**MEMORANDUM AND ORDER**

Plaintiffs Sauder West Farms, Inc. ("Sauder") and Farmers State Bank of Aliceville ("Farmers State Bank") filed this breach of contract action against defendant Sentry Select Insurance Co. ("Sentry"). This matter comes before the court on plaintiffs' Motion for Summary Judgment (Doc. 26) and defendant's Motion for Summary Judgment (Doc. 28). Plaintiffs filed a Response and Memorandum in Opposition to defendant's motion (Doc. 30), and defendant submitted a Reply (Doc. 32). And, defendant submitted a Memorandum in Opposition to plaintiffs' motion (Doc. 31). But plaintiffs never submitted a Reply. The motions thus are fully briefed, and the court is prepared to rule. For reasons explained below, the court grants defendant's Motion for Summary Judgment, and the court denies plaintiffs' Motion for Summary Judgment.

    **I.**    **Uncontroverted Facts**

The following facts are either stipulated to by the parties in their Stipulation of the Parties (Doc. 25), or are uncontroverted.

*Sentry Select Insurance Policy*

Plaintiff Sauder owned a John Deere 2011 Model no-Till Drill ("drill") and a Model 1910 cart ("cart") to transport the drill. Plaintiff Farmers State Bank owned a lien on the drill and cart. Defendant Sentry issued an insurance policy ("the policy") for the drill and cart. The policy insured the drill for $90,000 and the cart for $55,000 for an annual period beginning July 26, 2012 and ending July 26, 2013. Plaintiff Sauder paid the full annual premium on this policy. The policy's "Loss Payable Clause" identified plaintiff Farmers State Bank as the loss payee. The insured filed no claims on this policy from July 26, 2012 to July 26, 2013.

The policy contained a cancellation provision. The cancellation provision is titled "Common Policy Conditions." In relevant part, the "Common Policy Conditions" provide:

**A. Cancellation**

. . .

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.    10 days before the effective date of cancellation if we cancel for nonpayment of premium . . . .

Doc. 25-1 at 4. The "Common Policy Conditions" was modified by an Endorsement titled KANSAS CHANGES-CANCELLATION AND NONRENEWAL. This Endorsement provides:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

KANSAS CHANGES-CANCELLATION AND NONRENEWAL

. . .

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2a. We may cancel the policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

2

>   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium . . . .

*Id*. at 20.  The policy's Loss Payable Clause contained the following language:

>   The endorsement modifies insurance provided under the following:
>
>   COMMERCIAL INLAND MARINE COVERAGE - CONTRACTORS EQUIPMENT COVERAGE FORM.
>
>   With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
>
>   . . .
>
>   C.   We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.  Cancellation ends with this agreement as the loss payee's interest.  If we cancel the policy, we will mail you and the loss payee the same advance notice.

*Id*. at 6.  The policy also included a relevant modification in an Endorsement titled "KANSAS CHANGES-CANCELLATION AND NONRENEWAL."  This Endorsement provided:

>   NONRENEWAL
>
>   1.  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 60 days prior to the expiration of the policy.

*Id*. at 20.

### *Correspondence*

On June 18, 2013, defendant Sentry sent plaintiff Sauder (but not plaintiff Farmers State Bank) a letter captioned "RENEWAL OFFER."  The letter requested that plaintiff Sauder pay the annual premium for the renewal policy on or before July 26, 2013.  The premium amount for the renewal policy was $798.00.  The letter explained that if defendant Sentry did not receive the annual premium payment by the policy's expiration date, then defendant Sentry would "assume that the renewal offer has been rejected."  Doc. 25-2 at 2.  The June 18, 2013 correspondence

3

also provided plaintiff Sauder with a "Billing Information" document containing a bill due date of July 26, 2013.  Near the end of the Billing Information, the following statement appears: "Premium payment must be received by the billing due date to prevent cancellation of the policy for non-payment of premium."  *Id*. at 8.  That same documents also included "Coverage Information" containing the following language:

> **Renewal of Policy Number:  DA888482-IM503468**
>
> . . .
>
> If Coverage is bound, the full premium of $798.00 is due by the bill due date of 7/26/2013.

*Id*.  The bottom of the "Coverage Information" read:  "This is an application for insurance, NOT a binder for coverage."  *Id*.

Plaintiff Sauder did not pay the renewal premium on or before July 26, 2013.  Indeed, plaintiff Sauder never paid a renewal premium to defendant Sentry.  Defendant Sentry sent plaintiff Sauder a letter on August 5, 2013, explaining that the policy lapsed on July 26, 2013.  The letter advised plaintiff Sauder to call a company telephone number if it wanted to secure coverage.  Plaintiff Farmers State Bank never received a copy of the August 5, 2013 letter.

### *The Claim*

About two years later in August 2015, the drill was damaged in an accident.  On September 29, 2015, defendant Sentry notified plaintiff Sauder that it was denying coverage because the policy was not effective when the accident happened.  Defendant Sentry never issued a notice of cancellation of the policy to plaintiffs Sauder or Farmers State Bank as loss payee.  Defendant Sentry never issued or served a notice of nonrenewal on either plaintiff Sauder or plaintiff Farmers State Bank.  Plaintiff Farmers State Bank still had a lien on the drill and cart when the accident happened.  The loan for the drill and cart had an outstanding balance due.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court applies this same standard to cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and that it is entitled, as a matter of law, to the judgment sought by its motion. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where cross motions overlap, the court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted). Summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

Here, neither party disputes the facts on summary judgment. And, the interpretation of an insurance contract is a question of law. *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan. 1983). So, the motions here require the court to decide which party deserves judgment as a matter of law. *See Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 976 (D. Kan. 2016).

## III. Governing Law

Before addressing the parties' arguments, the court must determine which state's substantive law governs their disputes with one another. *Rigby v. Clinical Reference Lab., Inc.*, 995 F. Supp. 1217, 1221 (D. Kan. 1998) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78

(1938)).  Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the court has diversity subject matter jurisdiction over this case.  *See* 28 U.S.C. § 1332.  In a diversity case, federal courts apply the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under Kansas law, insurance contracts are governed by the law of the state where the contract was made.  *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997).  Here, the parties agree that Kansas law applies and no evidence suggests that the insurance contracts were made outside Kansas.  Therefore, the court interprets the contract under Kansas's substantive law.  The substantive law is determined by the state's highest court, although the court may consider other state court decisions as persuasive authority for what the highest court would hold.  *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1223 (10th Cir. 2016).

**IV.    Analysis**

Plaintiffs assert that defendant Sentry breached its obligations under the policy when it refused to cover plaintiff Sauder's claim for the damaged drill and cart.  Sentry asserts that it had no obligation to cover the claim because, as a matter of law, the policy was not in effect when the accident occurred.  The parties' papers establish a robust dispute whether the policy was in effect on the date of the accident.  Plaintiffs assert that it was.  Defendant says it was not.  This question turns on whether the policy lapsed or was cancelled.

Defendant argues that the policy lapsed or terminated when the policy period ended on July 26, 2013, and plaintiff Sauder failed to pay the renewal premium for renewing the policy.  So, defendant asserts, it never was required to provide a cancellation notice to plaintiffs because it never cancelled the policy.  Instead, it lapsed.  Based on these facts, defendant seeks summary judgment against plaintiffs' breach of contract claims.

6

In contrast, plaintiff Sauder asserts that defendant Sentry never complied with the requirements of Kan. Stat. Ann. §§ 40-2,120 *et. seq.* These statutes—according to plaintiff Sauder—required defendant Sentry to send a timely notice of nonrenewal when it cancelled the policy after June 26, 2013. Plaintiff Sauder contends that the contents of defendant's June 18, 2013 correspondence were ambiguous and thus never provided the requisite notice of nonrenewal. So, plaintiff Sauder contends, the policy renewed automatically and was effective when the accident occurred. Plaintiff Sauder thus argues that defendant breached the policy by refusing to cover his claim for the damaged drill and cart.

Plaintiff Farmers State Bank relies on a related, but distinct theory for its claim. It contends that defendant breached its obligation under the policy to send the bank—as the policy's loss payee—notice of nonrenewal. So, like its fellow plaintiff, plaintiff Farmers State Bank argues that the policy still was in effect on August 13, 2015, when the accident occurred. Based on these undisputed facts, plaintiff Farmers State Bank also seeks summary judgment in its favor on the breach of contract claim.

> **A. The Summary Judgment Fact Establish, As A Matter of Law, that Defendant Had No Obligation to Provide Plaintiff Sauder Notice of Nonrenewal. The Court Thus Grants Summary Judgment Against Plaintiff Sauder's Breach of Contract Claim.**

While plaintiffs filed their Motion for Summary Judgment together in one motion, plaintiff Sauder's breach of contract claim differs from plaintiff Farmers State Bank's claim. Plaintiff Sauder argues it was entitled to receive timely notice of cancellation as the named insured because of statutory and contractual requirements that govern lapses and cancellations of insurance policies. Because defendant never provided this notice, plaintiff Sauder contends, the policy automatically renewed and was in effect when the accident occurred. The court addresses plaintiff Sauder's arguments in the sections below.

### 1. Law Governing Policy Lapses and Cancellation

Kansas law distinguishes between a lapse of an insurance policy and a policy cancellation. *Unruh v. Prudential Prop. and Cas. Ins. Co.*, 3 F. Supp. 2d 1204, 1206 (D. Kan. 1998) (applying Kansas law) (first citing *Farmers Ins. Exch. v. Vincent*, 248 Cal. App. 2d 534 (Cal. App. 4th Dist. 1967); then citing *Shelly v. Strait*, 634 P.2d 1017, 1018 (Colo. Ct. App. 1981); then citing *Guaranty Nat'l Ins. Co. v. C de Baca*, 907 P.2d 210, 215 (N.M. Ct. App. 1995)). An insurer cancels an insurance policy by terminating the policy during its specified term. *Id.* In contrast, an insurance policy lapses when the insured fails to pay a renewal premium before the policy's expiration date. *Id.* These rules are consistent with rules that apply generally to contracts. These general principles recognize that contracts terminate when the period specified in the contract expires. *Id.* (first citing *Shepard v. U.S. Fid. & Guar. Co.*, 504 P.2d 228, 229 (Kan. 1972); then citing *Bartlett & Co., Grain v. Curry*, 563 P.2d 1096, 1101 (Kan. Ct. App. 1977)). These principals are subject to some qualifications, however. For example, by statute, a state may modify the general rule that an insurance policy lapses if the insured fails to pay the premium before the policy's expiration. *Unruh*, 3 F. Supp. 2d at 1206. Also, the parties to an insurance contract may modify the general rules. *Id.*

Here, defendant asserts the policy lapsed because plaintiff Sauder failed to pay the premium before the policy expired. The undisputed facts establish that the insurance policy was in effect from July 26, 2012 to July 26, 2013. Doc. 25 at 1. The summary judgment facts also establish that no one paid the renewal premium. Doc. 25 at 21. So, the general rule of contracts leads to the conclusion that plaintiff Sauder's failure to pay the premium caused the policy to expire. And, defendant had no obligation to cover the loss because it occurred outside the policy period.

Plaintiff Sauder asserts three arguments why this general rule does not apply. First, it argues the policy's renewal language was ambiguous and the court should construe that ambiguity against the party who drafted the contract—here, the defendant. Second, plaintiff Sauder contends that defendant failed to discharge a statutory obligation to provide a cancellation notice under Kan. Stat. Ann. §§ 40-2,120 *et. seq.* It provided no such notice and so, it reasons, the policy continued in effect. And third, plaintiff Sauder asserts that the policy imposed a contractual obligation on defendant to provide a cancellation notice based on the policy's language. The court addresses each argument, in turn, below.

### 2. Renewal Policy Ambiguity

Plaintiff Sauder contends that the language used by the renewal offer defendant made in its July 18, 2013 correspondence is ambiguous and the court should liberally construe it against defendant. In Kansas, "[c]ourts give the terms in an insurance policy their plain and ordinary meaning unless the parties have expressed a contrary intent." *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1176 (D. Kan. 2012) (citing *Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co.*, 925 P.2d 452, 465 (Kan. Ct. App. 1996)). Whether a term is ambiguous turns on "what a reasonably prudent insured would understand the language to mean." *Id.* (citing *Pink*, 925 P.2d at 465). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Id.* (citing *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 810 P.2d 283, 285 (Kan. 1991)). Where an insurance policy's terms have uncertain or ambiguous meanings, the court accepts "the construction most favorable to the insured." *Id.* (citing *Old Hickory*, 810 P.2d at 285). If the terms are not ambiguous, the court must enforce the policy according to its terms. *Id.*

9

Plaintiff Sauder asserts the June 18, 2013 correspondence is ambiguous, so the court should construe it against defendant. The undisputed facts establish that defendant sent a letter to plaintiff Sauder on June 18, 2013, and it included a renewal offer. Doc. 25-2. The "Coverage Information" letter attached in this correspondence used the following language: "[I]f the coverage is bound, the full premium of $798.00 is due by the billing due date of 7/26/13." *Id.* at 8. The bottom section of the "Coverage Information" letter included the following language: "This is an application for insurance, NOT a binder for coverage." *Id.* Plaintiff Sauder contends this language was ambiguous, and it never conveyed to it (and thus it could not have known) when the premium was due.

Defendant disagrees. Defendant contends that plaintiff Sauder never explains why the above-cited language made the premium payment's due date ambiguous or confusing. Instead, defendant argues, the "Coverage Information"—when read along with the Renewal Offer—does not modify the due date of the premium or create an ambiguity about the expiration date. The court agrees. The language at the bottom of the "Coverage Information" letter merely confirmed that the Renewal Offer constituted an application for insurance and not a binder for coverage. Doc. 25-2 at 8. The very same page of the letter also explained: "If coverage was bound, the full premium of $798.00 is due by the bill due date of July 26, 2013." *Id.* The summary judgment record contains no facts capable of supporting a reasonable finding or inference that defendant ever issued a binder, or that it was bound by the terms of any binder. So, this sentence has no effect on the parties' relationship. Instead, the other information conveyed by the "Coverage Information" page simply confirms the "bill due date" as July 26, 2013, and the "gross amount" due was $798.00. *Id.*

10

Also, the Renewal Offer specifically explained that the letter enclosed an "offer to renew your policy" and that the renewal date was July 26, 2013. *Id.* at 2. The letter explained that "premium is due on or prior to the expiration date of the policy," and if payment is not received by the policy's expiration, then defendant will "assume that the renewal offer has been rejected." *Id.* This language creates no ambiguity about when the premium was due or when the policy would expire. And, importantly, plaintiff has identified no language in the correspondence that would have allowed it to continue recovering the benefits of coverage without paying an annual premium. Plaintiff Sauder's argument thus never explains how this purported ambiguity caused it not to pay the premium by the policy's expiration date.

Next, plaintiff Sauder asserts, the "Billing Information" letter establishes that defendant cancelled the policy, or at least that the renewal letter is ambiguous about it. The "Billing Information" letter included the following language: "Premium payment must be received by the billing due date to prevent cancellation of the policy for non-payment of premium." Doc. 25-2 at 8. Plaintiff Sauder asserts that these words meant the policy automatically renewed because no need exists to cancel a policy that lapses. This argument fails for several reasons. First, under general contracting principles as recited above, the original policy lapsed on July 26, 2013. Second, the policy never renewed because plaintiff Sauder never responded to the offer to renew. Third, the policy never renewed because plaintiff Sauder never accepted the renewal offer and never paid the premium. The letter's reference to "cancellation" does not change the general rule that policies lapse when the policy's period expires and no premium is paid. Merely using the word "cancellation" will not transform a policy's lapse into a policy cancellation. By its own terms, the insurance policy lapsed on July 26, 2013. *See Traul v. Nationwide Agribusiness Ins. Co.*, No. 12-CV-2761, 2014 WL 4386128, at *4 n.2 (D. Kan. Sept. 5, 2014) (explaining that

11

"defendants' use of the term 'cancelled' does not determine defendants' obligations under the insurance policy [and that] [t]hose obligations are determined solely by Kansas law, the undisputed facts before the court, and the language of the insurance policy itself.").

The summary judgment facts provide no explanation why plaintiff Sauder never paid the renewal premium during the two years before the accident that damaged the drill. The undisputed facts present no ambiguity in defendant's communications to plaintiff Sauder. No reasonable jury could find that defendant's communications to plaintiff Sauder led it to believe that the policy continued to provide coverage after its expiration date. Plaintiff Sauder never paid a premium to renew the policy and no reasonable insured could understand the policy to continue providing coverage for free. The court thus concludes that the renewal offer is not ambiguous and does not create a genuine issue whether the policy continued beyond its expiration date. To the contrary, the undisputed summary judgment facts establish that defendant communicated to plaintiff Sauder that if it wanted the policy to continue, it must pay the premium by the billing due date of July 26, 2013. Because plaintiff Sauder never paid the premium, the policy lapsed when it expired on July 26, 2013.

### 3. Statutory Requirements of Notice

Plaintiff Sauder next argues that Kansas statutes required defendant to provide timely notice of nonrenewal. Because defendant never complied with this requirement, plaintiff Sauder reasons, the policy never ended. To the contrary, plaintiff Sauder argues, the policy automatically renewed and thus provided coverage for its loss of the drill.

Plaintiff Sauder asserts that Kan. Stat. Ann. §§ 40-2,120 *et seq*. imposes a statutory requirement obligating insurance carriers to provide notice for nonrenewal of insurance policies. In relevant part, Kan. Stat. Ann. § 40-2,120 provides:

> No policy of property or casualty insurance, other than accident and sickness, used primarily for business or professional needs that has been in effect for 90 days or more may be canceled except for one of the following reasons: (a) Nonpayment of premium . . . .

Kan. Stat. Ann. § 40-2,121 provides:

> Any insurance company that denies renewal or substitution of similar coverage for the same exposures under any property or casualty insurance policy which is used primarily for business or professional needs shall give at least 60 days' written notice to the named insured at such person's last known address of the insurance company's intention not to renew such policy.

Finally, Kan. Stat. Ann. § 40-2,122 provides:

> Any insurance company doing business in this state shall provide to an insured a written explanation specifically detailing the reasons why such company canceled or denied renewal of an existing policy of insurance.

The summary judgment motions here require the court to decide whether these Kansas statutes required defendant to provide plaintiff Sauder with timely notice of nonrenewal.

In *Unruh v. Prudential Property and Casualty Insurance Co.*, the insurer sent an offer to renew an insurance policy before the policy lapsed. The insured failed to respond to the offer before the policy's expiration date. *Unruh*, 3 F. Supp. 2d at 1205. The insurance company mailed the insured another letter explaining that he could continue his coverage by submitting payment. Again, the insured failed to make payment. *Id. Unruh* held, that when an insurer offers to renew coverage and the insured fails to meet the deadline to make the premium payment, the policy lapses. *Id.* at 1207. These circumstances do not constitute a denial of renewal. *Id.* The court thus held that Kansas statutory notice requirements did not apply to this situation.[1] *Id.*

---

[1] The statutes at issue in *Unruh* were automobile insurance statutes: Kan. Stat. Ann. §§ 40- 276(a) *et seq.* and K.S.A. §§ 40-3101 *et seq.* Here, the controversy arises from an insurance policy covering property and casualty insurance. Still, the court finds *Unruh*'s treatment of the automobile provisions instructive. They serve the same purposes as Kan. Stat. Ann. §§ 40-2,120 *et seq.*, *i.e.*, to provide insureds

The facts here are nearly identical. Plaintiff Sauder failed to pay the premium by the payment deadline. Indeed, plaintiff Sauder never paid the premium and the policy lapsed. So, Kan. Stat. Ann. §§ 40-2,120 *et seq.* do not apply. Thus, following *Unruh*'s reasoning, the court agrees with defendant. Plaintiff Sauder's policy lapsed. The insurer did not deny revival of the policy.

Plaintiff Sauder also invokes cases decided by state courts in other states. First, it cites *Auto Owners Insurance Co. v. Freret*, 280 So.2d 638, 642–43 (La. Ct. App. 1973), and compares Kansas statutes to a Louisiana statute governing requirements for notice when a carrier decides not to renew. But *Freret* is different. The *Freret* insurer did not renew the insured's policy because of excessive losses. 280 So.2d at 642. But, here, the insurer never refused to renew the policy. Instead, the policy expired on its own terms when plaintiff Sauder failed to pay the premium to renew the policy. This factual difference is crucial to applying the Louisiana and Kansas nonrenewal notice statutes because neither state's statute applies if the policy expires on its own terms. And, the purpose of Louisiana's timely notice statute is to "make [it] known to the insured that his policy is being terminated and to afford him sufficient time to obtain other insurance protection." *Broadway v. All-Star Ins. Corp.*, 285 So.2d 536, 539 (La. 1973). When, as here, there is no need to protect the insured when the insurer offers to continue its insurance coverage—so long as the insured pays the premium for the new policy. The undisputed facts here establish that defendant offered to renew plaintiff Sauder's coverage. It makes no sense that the law would require defendant to send a notice of nonrenewal for a policy that defendant offered to renew.

---

notice of insurance cancellation. The parties agree with this premise. Both parties rely on *Unruh* for their arguments.

Plaintiff next relies on *Strickland General Agency v. Puritan Insurance Co.*, 361 S.E.2d 186 (Ga. Ct. App. 1987) to show how a Georgia court construed Georgia's notice statute. But again, *Strickland*'s facts differ from the facts here. In *Strickland*, an insurance company issued a one-year policy. *Id.* at 186. The insured died more than a month before the insurance policy expired, and the insurer sent a memorandum notifying the insured's insurance agent that the insured had died, that the house insured by the policy was vacant, and that a representative of the insured's estate was requesting that the insurer cancel the policy. *Id.* The agent never sent notice of cancellation or nonrenewal. *Id.* at 187. A day after the policy had expired, a fire destroyed the insured's property. *Id.* The insurer paid the loss amount to the insured's estate because the agent never sent notice of cancellation or nonrenewal in response to the request made by the insured's estate. *Id.* The court determined that the governing Georgia statute does not allow an insurance policy covering residential real property to expire on its own terms without requiring notice of cancellation or nonrenewal. *Id.* Unlike the facts here, *Strickland* did not involve an insurer sending a renewal offer with specific language explaining that the insurer must receive payment by the current policy's expiration date to renew the policy and that, if no payment is received, the insurer would assume that the insured had rejected the renewal offer. Thus, the court finds plaintiff's reliance on *Strickland* unpersuasive[2].

---

[2] Plaintiff Sauder also cites *Wahl v. Country Mutual Insurance Co.*, 640 N.W.2d 689 (N.D. 2002) even though it concedes that it does not help him. See Doc. 27 at 12. As here, the insured in that case had secured a one-year policy but failed to pay the premium required to renew the policy. After the policy expired, the insured's property was damaged. As here, the insured argued that his policy had continued beyond its expiration date because the insurance company hadn't sent notice informing him that it was cancelling the policy. The North Dakota Supreme Court rejected the insured's argument and his reliance on a statute similar to Kansas's cancellation statute. Requiring an insurer to issue a cancellation notice on these facts, the North Dakota Court reasoned, would "constitute an absurd and ludicrous result." *Id.* at 691.

In sum, requiring the defendant insurer to send notice of nonrenewal 60 days before the policy lapsed on its own terms for non-payment of premium is an unsupportable outcome. The undisputed facts establish that defendant was willing to renew the policy. It even sent plaintiff Sauder an offer to do so. Plaintiff Sauder chose not to renew the policy. That was its right. But Kansas law will not permit it to receive the benefit of the insurance coverage it elected not to purchase. The court concludes that when a policy lapses on its own its own terms, Kansas imposes no statutory requirement on an insurer to send timely notice of nonrenewal. And plaintiff Sauder cannot establish, as a matter of law, that the Kansas statutes imposed an obligation on defendant to send notice of its nonrenewal after plaintiff Sauder failed to pay the premium.

### 4. Contractual Requirements of Notice

Finally, plaintiff Sauder asserts defendant owed a contractual duty to provide timely notice under the policy's language. But the undisputed summary judgment facts preclude its argument. "The mere fact that defendants delivered a renewal policy to plaintiffs does not render that policy 'in effect' where it is undisputed that plaintiffs never paid any renewal premium." *Traul v. Nationwide Agribusiness Ins. Co.*, No. 12-CV-1761, 2014 WL 4386128, *2 (D. Kan. Sept. 5, 2014). It is undisputed here that plaintiff Sauder never paid the renewal premium. So, the delivery of an offer for a renewal policy did not render the policy in effect. The parties agree no binder existed. Thus, the policy was not effective after the policy period expired merely because defendant delivered an offer for a renewal policy.

Plaintiff Sauder cites *Bank of Toccoa v. Cotton States Mutual Insurance Co.*, 439 S.E.2d 60, 65 (Ga. Ct. App. 1993), to support its assertion that the policy remained in effect even though it never paid the premium. The policy terms at issue in *Bank of Toccoa* required notice of

16

nonrenewal not less than 20 days before expiration of the policy. *Id.* But the insurer in *Bank of Toccoa* had acted to cancel the policy while the original policy was still in effect. *Id.* *Bank of Toccoa* did not involve a policy lapse, like the facts present here. *Id.* Thus, *Bank of Toccoa* does not support plaintiff's argument.

Also, plaintiff Sauder invokes the following policy language to support its argument that the parties' contract required timely notice. The Common Policy Endorsement included the following words:

> 2a. We may cancel the policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:
>
> (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

Doc. 27-2 at 4. No reasonable factfinder could conclude that this language suggests that the contract requires notice of cancellation. But, here, the policy lapsed on its own terms not by cancellation. So, the court finds that the contract imposed no duty on defendant to provide notice of nonrenewal.

The undisputed summary judgment facts establish that defendant had no statutory or contractual duty to provide plaintiff Sauder with timely notice when the policy lapsed on its own terms. Instead, the summary judgment facts establish, as a matter of law, that the policy lapsed because plaintiff Sauder never paid the premium required to renew the policy. Thus, the policy was not effective when the loss occurred, and defendant had no obligation to cover the loss. Defendant is not liable for breaching the insurance policy, and the court thus grants summary judgment against plaintiff Sauder's breach of contract claim.

### B. The Summary Judgment Facts Establish, As A Matter of Law, that Defendant Had No Obligation to Provide Plaintiff Farmers State Bank Notice of Nonrenewal. The Court Thus Grants Summary Judgment Against Plaintiff Farmers State Bank's Breach of Contract Claim.

Plaintiff Farmers State Bank also asserts defendant failed to provide it with timely notice of policy nonrenewal. Plaintiff Farmers State Bank argues that the policy's loss payable clause required defendant to give notice to the loss payee even if plaintiff Sauder was not entitled to timely notice. It asserts that defendant's failure to provide this notice breached the policy. Defendant disagrees. It contends that plaintiff Farmers State Bank has no greater rights under the policy than the insured, and so, the defendant insurer owed no duty to provide the bank with a notice of cancellation.

A loss payee clause is different than a mortgage clause because a loss payee clause provides only that proceeds from a policy are payable to the named payee. *Vargas v. Nautilus Ins. Co.*, 811 P.2d 868, 873 (Kan. 1991). But, such a clause does not create a contract between the payee and insurer. *Id.* "The named payee must stand in the shoes of the insured and has no rights independent of the insured's rights." *Id.* So, consistent with *Vargas*, plaintiff Farmers State Bank must "stand in the shoes" of plaintiff Sauder, and plaintiff Farmers State Bank has no independent rights. As a consequence, the analysis for plaintiff Sauder's breach of contract claim applies equally to plaintiff Farmers State Bank. So, plaintiff Farmers State Bank's argument fails for the same reasons discussed above.

As plaintiff points out, the Kansas Court of Appeals has construed *Vargas* narrowly. In *Wunschel v. Transcontinental Insurance Co.*, 839 P.2d 64, 70 (Kan. Ct. App. 1992), the court held that if the loss payee can prove the loss payable provisions were made for its benefit, then the loss payee may sue for breach of the insurance contract even if the contract was for the

exclusive benefit of the loss payee. *Wunschel*, 839 P.2d at 70. But, *Wunschel* still requires the loss payee to prove an underlying breach of the contract. *Id.* at 70-71.

Plaintiff Farmers State Bank now asks the court to apply the language of *Wunschel* to the loss payable provision in defendant Sentry's policy. Plaintiff Farmers State Bank contends it is a third-party beneficiary under the policy because it is named as a loss payee and the "Loss Payable Clause" required the insurer to provide notice of cancellation to the insured and loss payee. Doc. 25 at 9. The pertinent language of the "Loss Payable Clause" provides:

> We may cancel the policy as allowed by the CANCELLATION Common Policy Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy, we will mail you and the loss payee the same advance notice.

Doc. 25-1 at 6. Plaintiff Farmers State Bank is the named loss payee. So, it contends, the "Loss Payable Clause" makes Farmers State Bank a third-party beneficiary of the insurance contract.

Even if the court applies *Wunschel* broadly and assumes that plaintiff Farmers State Bank has standing as a loss payee to assert rights under the "Loss Payable Clause" and "Common Policy" language, neither of these provisions required the defendant insurer to give the bank notice of policy lapse. The language of the "Loss Payable Clause" and the "Common Policy" impose no requirement of timely notice for the policy's lapse. The court thus concludes that these provisions did not obligate defendant to provide notice of a policy lapse. Instead, the language required notice only on policy *cancellation*. Because the undisputed facts establish that the policy lapsed— but was not cancelled— defendant had no duty to provide timely notice of nonrenewal to plaintiff Farmers State Bank under these provisions.

### V.     Conclusion

The summary judgment facts establish defendant never provided timely notice to plaintiffs because the policy lapsed according to its own terms when plaintiff Sauder never paid to renew the policy. Kansas did not require defendant to provide plaintiff Sauder timely notice

19

of nonrenewal when the policy lapsed on its own terms.  Nor did the loss payable clause confer a contractual duty on defendant to provide plaintiff Sauder with timely notice.  Instead, the summary judgment facts establish that the policy lapsed when plaintiff Sauder failed to pay the premium before the policy's expiration date.  Thus, defendant had no contractual obligation to insure plaintiff Sauder's loss of the drill in an accident that occurred years after the policy expired.  For these reasons, the court grants summary judgment against plaintiff Sauder's breach of contract claim.  The court also denies plaintiff Sauder's motion for summary judgment in favor of its breach of contract claim.

The undisputed summary judgment facts likewise establish that defendant had no obligation to provide plaintiff Farmers State Bank—a loss payee—notice of the policy nonrenewal.  So, defendant is entitled to summary judgment, as a matter of law, against plaintiff Farmers State Bank's breach of contract claim.  And correspondingly, the court denies plaintiffs' Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sentry Select Insurance Co.'s Motion for Summary Judgment (Doc. 28) is granted.

**IT IS FURTHER ORDERED THAT** plaintiffs Sauder West Farms, Inc. and Farmers State Bank of Aliceville's Motion for Summary Judgment (Doc. 26) is denied.

**IT IS SO ORDERED.**

**Dated this 16th day of March 2018, at Topeka, Kansas.**

                **s/ Daniel D. Crabtree**
                **Daniel D. Crabtree**
                **United States District Judge**